UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ROBERT LANGERMANN,

    Plaintiff,

v.                                          CASE NO: 14-CV-22531

SAMUEL J. DUBBIN; JONATHAN W.
CUNEO; STEVE W. BERMAN; ILYA
"ELIE" RUBINSTEIN; DAVID C.
WROBEL; THE BLUE CARD, INC.;
JEWISH FAMILY SERVICE AGENCY OF
LAS VEGAS; JOHN DOES I-XX; and ROE
CORPORATIONS XXI-XL,

    Defendants.
_____/

**DEFENDANTS' MOTION FOR INJUNCTIVE RELIEF AND SANCTIONS**

Defendants Samuel J. Dubbin ("Dubbin"), Jonathan W. Cuneo ("Cuneo"), and Steve W. Berman ("Berman"), collectively "Class Counsel," together with Defendants Ilya 'Elie' Rubinstein ("Rubinstein"), David C. Wrobel ("Wrobel"), The Blue Card, Inc. ("TBCI"), and Jewish Family Service Agency of Las Vegas ("JFSA"), globally referred to hereinafter as "Defendants," pursuant to Federal Rules of Civil Procedure 5 and 11 and in connection with their Motion to Dismiss, move for an order (1) declaring Plaintiff Robert Langermann ("Langermann") a vexatious or frequent litigant; (2) enjoining Langermann from filing any more frivolous, baseless, or repetitive lawsuits against them in this or any other federal district court; and (3) subjecting Langermann to injunctive procedures so as to preserve and protect the judiciary and Defendants' time and resources.  Defendants state as follows in support thereof:

## PROCEDURAL BACKGROUND

1. On May 7, 2001, Class Counsel, on behalf of Hungarian Holocaust survivors who were persecuted and imprisoned by the Nazis during World War II, filed a putative class action lawsuit against the United States for its role in the appropriation, distribution, and sale of the class members' valuable personal property. The suit, hereinafter referred to as the "<u>Original Action</u>," was styled *Irving Rosner, et al. v. United States of America*, Case No. 01-1859, and was assigned to the Honorable Patricia A. Seitz.

2. After years of litigation, the parties in the Original Action reached a settlement and on September 30, 2005, the Court certified a settlement class and entered a Final Order and Judgment, incorporating the parties' settlement agreement and plan of allocation, which the Court found "fair and reasonable." The Original Action's Final Order and Judgment, which is attached as Exhibit "A," did not call for individual distributions to the class members as compensation, but instead created a settlement fund of $25.5 million to be disbursed by certain agencies to provide social services and humanitarian relief to the neediest class members, subject to a maximum allotment of $2,500.00 per year, conditioned upon the class members' provision of biographical information and documentation regarding income and assets to justify the need for the requested funds (*e.g.*, a letter from a doctor regarding a health emergency, an eviction notice, a pharmacy bill, etc.) and authorization of a home visit by a social worker, if necessary.

3. The Court gave "the best notice practicable" to all potential class members of the settlement agreement and plan of allocation by providing individualized mail notice to 49,600 Hungarian Holocaust survivors, and by publishing notice through general and Jewish news media and organizations world-wide. Individuals receiving notice were then afforded an opportunity to opt out of the settlement.

14975604v1 0928762

4.     Langermann, a Hungarian Holocaust survivor who immigrated to the United States in 1958 and has resided in Nevada at all pertinent times, received the notices and elected not to opt out of the settlement. This Court consequently ruled that he would be "bound by the Settlement Agreement" and would "not have any further opportunity to exclude [himself] from the Action." Ex. A.

5.     After the settlement agreement went into effect, Langermann sought to obtain settlement funds from JFSA and TBCI, the social service agencies tasked with the responsibility of exercising their discretion to administer to Langermann the funds for which he was deemed eligible and entitled to receive. When Langermann requested settlement grants notwithstanding the fact that his expenses were less than his income, JFSA and TBCI requested that Langermann furnish documentation supporting his eligibility and entitlement to receive funding. Langermann refused to comply with these conditions precedent to receiving settlement funds. When Langermann requested payment of his credit card bill, he did not provide detail of the bill that would have shown what had been purchased. And, despite the agencies' requests for information regarding Langermann's investments, Langermann refused to disclose the detail of same. Although the agencies approved settlement grants for Mr. Langermann exceeding $7,000 between 2006–2009, eventually they requested a release for additional documentation and that he allow social workers to conduct a home visit in order to ascertain his financial situation.[1]

6.     Although the allocation plan provided that a home visit would "be necessary to determine need" if documentation were not provided, Langermann refused to either sign a release or permit a home visit. Eventually, the agencies' attorney became involved and advised Langermann that if he refused to cooperate and comply with the settlement terms (*i.e.*, by signing

---

[1] The facts alleged in paragraph five may be gleaned from what is attached hereto as Exhibit "B," and, specifically, pages 59–65 thereof.

a release and permitting a home visit), then his requests for grants and funding would not be processed. Langermann still refused.[2]

7. On July 22, 2009, in an attempt to evade compliance with the "fair and reasonable" Court-approved settlement terms and to address JFSA and TBCI's insistence on Langermann's compliance with same, Langermann filed a *pro se* motion in the Original Action alleging the violation of his constitutional rights, including his right to privacy. This motion, entitled "Class Member Plaintiff Robert Langermann's Motion for an Order to Show Cause why the Blue Card Inc. and the Las Vegas Jewish Family Service Agency Should not be Held in Contempt of Court," is attached as Exhibit "B."

8. Judge Seitz "carefully reviewed" the motion and rejected Langermann's claims on the merits, even without input or responsive argument from Class Counsel, JFSA, or TBCI. The March 3, 2010 order denying Langermann's motion, which is attached as Exhibit "C," provides as follows, with emphasis supplied:

> [T]he Court must deny Mr. Langermann's motion because it is clear from the exhibits attached to the motion that ***both The Blue Card Inc. and the Las Vegas Jewish Family Service Agency have acted consistent with their responsibilities*** under the Amended Plan of Allocation. The settlement fund, created because the named plaintiffs agreed that the fund should be allocated amongst the neediest members of the class of Hungarian Holocaust survivors, contains a finite amount of money. ***Therefore, the Allocation Plan provides means to determine the neediest. Mr. Langermann has not been asked for any information that has not been asked of any other American survivor. Such information is an essential first step for participation in the Plan of Allocation. If Mr. Langermann feels that such information request is intrusive and he will not provide it, the Court respects his feelings and his decision, but such decision on his part means that he cannot be considered for participation in the Plan nor receive any more of the funds.***
>
> Additionally, it appears that Mr. Langermann questions the extent of the reimbursements that he has received, including denials of reimbursements in excess of the yearly maximum allocation each survivor may receive. Because the

---

[2] Once again, the facts alleged in paragraph six may be gleaned from what is attached hereto as Exhibit "B," and, specifically, pages 20; 52–70 thereof.

14975604v1 0928762

>  fund is limited and the survivors in need are numerous, ***the Allocation Plan gives the distribution agencies, such as those Mr. Langermann seeks to have the Court order to show cause, the discretion to determine need after they have the personal information regarding each applying survivor's medical and financial needs and resources****. There is nothing in Mr. Langermann's submission which would support a finding that the two agencies in question have abused their discretion by acting in an arbitrary manner. In fact, the submission clearly reflects that Mr. Langermann has been accorded the same respectful treatment and consideration that other applying survivors have been given.* While the Court wishes that every request for funds could be honored, the reality is that such is not possible. It is hoped that Mr. Langermann will consider what a difficult task it is to try to help as many of the very neediest survivors the agencies can with the limited funds available, and that he will take comfort in the fact that if he is not receiving the funds, then they are going to someone who is even needier than he. The Court recognizes the burden this places on Mr. Langermann, but we are all called to dedicate ourselves to helping those less fortunate than ourselves.

9. Disappointed with his inability to circumvent the Final Order and Judgment through motion practice in the Original Action, on September 7, 2011 Langermann initiated a separate lawsuit in the United States District Court of Nevada, Case No. 2:11-cv-01438 (the "Nevada Action"), making the same essential claims that were denied by Judge Seitz in the Original Action and naming Dubbin and Judge Seitz as defendants in addition to the two social service agencies. This complaint is attached hereto as Exhibit "D."

10. In response, the Plaintiffs in the original action (*i.e.* the rest of the settlement class) and Class Counsel filed a motion in the Original Action to seek an injunction against Langermann's effort to collaterally attack the settlement through the Nevada Action. The Original Action Plaintiffs' and Class Counsel's motion to enjoin Langermann, together with Langerman's response and Class Counsel's reply, are attached as Composite Exhibit "E."

11. On March 1, 2012, Judge Ungaro[3] issued an order granting the Original Action Plaintiffs' and Class Counsel's motion, thereby enjoining Langermann from prosecuting the

---

[3] Because Judge Seitz was named as a defendant in the Nevada Action, she recused herself from addressing Class Counsel's motion in the Original Action for an injunction against Langermann's effort

Nevada Action. The order, attached as Exhibit "F," ruled that the Nevada Action would "involve a re-litigation of the Court's rulings in this case and, specifically the Court's Order Denying Contempt Motion."

12. Langermann filed an interlocutory appeal to the Eleventh Circuit, and moved this Court to stay its March 20, 2012 order pending the appellate ruling. Langermann's notice of appeal and motion to stay, together with Class Counsel's response and Langermann's reply, are attached as Composite Exhibit "G." Simultaneously therewith and prior to a ruling on either Langermann's appeal or his motion to stay, Langermann continued to violate this Court's injunction by continuing to prosecute the Nevada Action (*e.g.*, by filing a motion seeking "an order to extend time for service of process upon the named defendants," as reflected in what is attached as Exhibit "H").

13. On August 28, 2012, Judge Ungaro issued an order denying Langermann's motion for stay, reasoning in pertinent part: "Should the Court grant Mr. Langermann's motion, the Nevada defendants and the Nevada court would be required to move forward with Mr. Langermann's case, ***devoting time and resources to a lawsuit that this Court has already determined should not go forward. The burden of such needless litigation amounts to a substantial harm.***" This order is attached as Exhibit "I."

14. The Eleventh Circuit Court of Appeals affirmed Judge Ungaro's March 1, 2012 ruling by order dated April 22, 2013, and the United States District Court of Nevada consequently dismissed the Nevada Action with prejudice by order dated April 22, 2013, expressly cautioning Langermann to refrain from filing further motions, lest he be subject to sanctions. Undaunted, Langermann filed an appeal to the Ninth Circuit Court of Appeals

---

to collaterally attack the settlement through the Nevada Action. The matter was then assigned to Judge Ungaro.

regarding the dismissal of the Nevada Action, an appeal which remains pending. Langermann also filed additional unsuccessful *pro se* motions in the Original Action, including a motion to allow transfer of the Nevada Action to the jurisdiction of the Southern District of Florida.

15.     Despite the previous injunction and notwithstanding the numerous adverse rulings and warnings to curb his litigiousness, Langermann has now filed an initial and amended complaint in *this* lawsuit, ostensibly as an entirely separate action, to again try to circumvent the Original Action's Settlement Agreement and Final Order, and to recover "damages" arising therefrom. The operative iteration of Langermann's "new" lawsuit is attached as Exhibit "J."

16.     Langermann's "new" lawsuit alleges eighteen (18) causes of action all of which arise out of the same nucleus of operative fact as his prior claims (*i.e.*, a dispute regarding the Defendants' actions in administering to Langermann settlements funds pursuant to the Final Order and Judgment in the Underlying Action), and the vast majority of which mirror the claims in the Original Action's Motion for an Order to Show Cause and the Nevada Action. In other words, Langermann's "new" claims are nothing more than repeated attempts to circumvent the Final Order and Judgment entered by Judge Seitz in the Original Action, as well as Judge Seitz's order denying Langermann's Motion to Show Cause, which ruled that the Defendants, and particularly TBCI and JFSA, have not violated Langermann's rights by requiring his compliance with the Court-approved settlement terms and conditions. Langermann's "new" lawsuit likewise violates the clear import of Judge Ungaro's injunction (which was affirmed by the Eleventh Circuit), which held that Langermann's nearly identical Nevada Action was an improper collateral attack on the Final Order and Judgment in the Original Action and of Judge Seitz's exclusive and continuing jurisdiction over the settlement.

14975604v1 0928762

## **MEMORANDUM OF LAW**

### A.     *Standard of Review*

Federal courts have "both inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *May v. Hatter*, No. 00-4115-CIV, 2001 WL 579782, *2 (S.D. Fla. May 15, 2001). Because "[e]very lawsuit [or motion] filed, no matter how frivolous or repetitious, requires the investment of court time," *id.* at *4, a prime example of the type of conduct that clogs the judicial machinery and impairs a court's exercise of its Article III functions is a frequent litigant's abusive filing of a pleading that is not well-grounded in fact or law or that is based on allegations which have been previously adversely decided against him. *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002); *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988). When this occurs, the court may exercise its "considerable discretion" by invoking Rule 11 to fashion an appropriate remedy that curbs repetitive and abusive filings without completely foreclosing access to the federal courts, including but not limited to the issuance of sanctions and the imposition of procedural injunctions.[4] *See May*, 2001 WL 579782 at *4; *Riccard*, 307 F.3d at 1294–95; *see also Abram-Adams v. Citigroup, Inc.*, No. 12-80339-CIV, 2013 WL 451897, *2 (S.D. Fla. 2013) ("The only restriction the Eleventh Circuit has placed upon injunctions designed to protect against abusive and vexatious litigation is that a litigant cannot be completely foreclosed from *any* access to the court.").

### B.     *The Court Should Declare Langermann a Vexatious Litigant and Should Issue an Order Imposing Procedural Injunctions*

---

[4] Although litigants invariably insist that the imposition of even partial procedural injunctions violates their First Amendment rights, these claims have been repeatedly rejected; it is well established that litigants do not have a First Amendment right to abuse the judicial process by submitting repetitive and baseless filings. *See Laosebikan v. Coca-Cola Co.*, 415 Fed.Appx. 211, 215 (11th Cir. 2011); *Riccard*, 307 F.3d at 1298.

At issue here are Langermann's repeated allegations of wrongdoing with respect to the Original Action and the "fair and reasonable" settlement agreement that was entered in connection therewith nearly nine years ago. It is patently obvious that Langermann's "new" complaint stems from the same nucleus of operative fact as his prior claims (*i.e.*, a dispute regarding the Defendants' actions in administering to Langermann settlements funds pursuant to the Final Order and Judgment in the Underlying Action). Langermann continues to assert that by conditioning his receipt of settlement benefits upon his compliance with the "fair and reasonable" court-approved terms of the settlement agreement (*i.e.*, his provision of documentation and allowance of an in-home visit), the Defendants have somehow violated Langermann's constitutional rights, participated in an elaborate conspiracy, intentionally inflicted emotional distress, breached various and unarticulated duties, and committed fraud and legal malpractice.

Langermann's "new" complaint is nothing more than another attempt to circumvent the Final Order and Judgment, as well as Judge Seitz's prior rulings in the Original Action. Langermann's claims in this "new" action are all premised upon an erroneous interpretation of the Original Action's Final Order and Judgment, an interpretation that this Court (through Judge Seitz and Judge Ungaro) have rejected on multiple occasions. There is no reason why Defendants—who, for nearly a decade now, have already expended significant time and resources in addressing Langermann's vexatious litigiousness—should be required to bear the expense and onerous burden of ever again responding to Langermann's incessant and unsubstantiated claims.[5]

---

[5] As part of their ongoing duty to the class, Class Counsel attempted to resolve Langermann's complaints regarding the plan implementation and his distributions with the relevant agencies, with some success. The attorneys spent time on phone calls with Langermann and responded to certified letters and faxes.

Under the circumstances, the Court should declare Langermann a vexatious litigant with respect to the Defendants, and should issue an order imposing filing and screening requirements, consistent with the proposed order attached as Exhibit "K." The proposed relief is consistent with similar orders which have been entered under like circumstances. *See, e.g.*, *May*, 2001 WL 579782 (permanently enjoining a vexatious litigant from any further filings without first obtaining leave of court); *Cofield v. Ala. Pub. Srv. Com'n*, 936 F.2d 512, 517–19 (11th Cir. 1991) (upholding an order requiring a litigant to pay full filing fees and seek prefiling approval); *Copeland v. Green*, 949 F.2d 390, 391 (11th Cir. 1991) (upholding pre-screening injunction as against a repeat litigant); *Patterson*, 841 F.2d at 387 (imposing $4,947.00 in attorney's fees as a sanction against a *pro se* litigant who brought an action based upon allegations which had been adversely decided against him previously, emphasizing that "*pro se* filings do not serve as an 'impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."); *Procup v. Strickland*, 792 F.2d 1069, 1072 (11th Cir. 1986) (noting that litigants may be required to accompany all future pleadings with affidavits certifying that the claims being raised are novel, subject to contempt for false swearing); *see also Abram-Adams*, 2013 WL 451897 at *3 ("Plaintiff is enjoined from filing any new action, complaint, or claim for relief against Defendant Citigroup, Inc., its affiliates, subsidiaries, or attorneys in federal court, state court, and federal and state administrative and executive agencies and departments unless she first obtains leave to file from the district court."); *In re Kozich*, 406 B.R. 949, 956 (S.D. Fla. 2009) (enjoining a repeat litigant from filing adversary proceedings or contested matters on a *pro se* basis without first obtaining prior court approval).

---

Despite their efforts, Langermann questioned Class Counsel's performance of their professional responsibilities before the Washington State, District of Columbia, and Florida State Bar Associations,

WHEREFORE, Defendants respectfully request that this Court enter an order consistent with Exhibit "K," and grant any other and further relief in Defendants' favor as the Court deems just and equitable under the circumstances.

HINSHAW & CULBERTSON LLP

/s/ *DANIEL C. SHATZ*
**RONALD L. KAMMER**
Florida Bar No. 360589
rkammer@hinshawlaw.com
**DANIEL C. SHATZ**
Florida Bar No. 94696
dshatz@hinshawlaw.com
2525 Ponce de Leon Blvd. Suite 400
Miami, Florida 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that, as required by Local Rule 7.1(a)(3), undersigned conferred (telephonically) with Langermann (who is appearing *pro se*) to resolve the issues raised by this motion, but Langermann has objected to the relief requested herein.

/s/ *DANIEL C. SHATZ*
Daniel C. Shatz

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 15, 2014, a true and correct copy of the foregoing was served by certified and regular mail on Robert Langermann, P.O. Box 19724, Las Vegas, NV 89132, and electronically filed with the Clerk of the Court by using the CM/ECF system. I am unaware of any non-CM/ECF participants other than Robert Langermann.

/s/ *DANIEL C. SHATZ*
Daniel C. Shatz

---

forcing Class Counsel to respond to inquiries regarding same. *See* Ex. E.