**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

ROBERT LANGERMANN,

      Plaintiff,

v.                                                           CASE NO: 14-CV-22531

SAMUEL J. DUBBIN; JONATHAN W.
CUNEO; STEVE W. BERMAN; ILYA "ELIE"
RUBINSTEIN; DAVID C. WROBEL; THE
BLUE CARD, INC.; JEWISH FAMILY
SERVICE AGENCY OF LAS VEGAS; JOHN
DOES I-XX; and ROE CORPORATIONS XXI-
XL,

      Defendants.

_____/

## <u>DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW</u>

Defendants Samuel J. Dubbin ("Dubbin"), Jonathan W. Cuneo ("Cuneo"), and Steve W.

Berman ("Berman"), collectively "Class Counsel," together with Defendants Ilya 'Elie' Rubinstein

("Rubinstein"), David C. Wrobel ("Wrobel"), The Blue Card, Inc. ("TBCI"), and Jewish Family

Service Agency of Las Vegas ("JFSA"), globally referred to as "Defendants," pursuant to Federal

Rule of Civil Procedure 12(b)(6), move for an order dismissing this action, as follows:

## <u>PROCEDURAL BACKGROUND</u>

1.      On May 7, 2001, Class Counsel, on behalf of Hungarian Holocaust survivors, filed a

putative class action lawsuit against the United States for its role in the appropriation, distribution

and sale of the class members' valuable personal property. The suit, hereinafter referred to as the

"Original Action," was styled *Irving Rosner, et al. v. United States of America*, Case No. 01-1859,[1]

---

[1] The Court may take judicial notice of the docket Original Action. *Cf. Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed.App'x 52, 53 (11th Cir. 2006).  Unless otherwise indicated, the docket entries in this motion correspond to the docket entries for the Original Action.

and was assigned to the Honorable Patricia A. Seitz.

2.      After years of litigation, the parties in the Original Action reached a settlement and on September 30, 2005, the Court certified a settlement class and entered a Final Order and Judgment, incorporating the parties' Settlement Agreement and plan of allocation, which the Court found "fair and reasonable."  DE 246. The Settlement Agreement and plan of allocation did not call for individual distributions to the class members as compensation, but instead created a settlement fund of $25.5 million to be disbursed by certain agencies to provide social services and humanitarian relief to the neediest class members.  *See id.*; *see also* DE 211; 263; 320. Class members requesting funds from agencies for such purposes would be required to (1) provide documentation regarding income and assets, and, if unwilling, allow a home visit by a social worker; (2) provide biographical information to establish their legitimate status as Hungarian Holocaust survivors; and (3) provide documentation to justify the need for the requested funds.  *See* DE 263. The agencies, in turn, would then be tasked with exercising their discretion to (1) determine the class members' eligibility and entitlement to receive funding derived from the settlement funds and (2) administer the funding in the amounts deemed appropriate, taking into consideration the need to spread the settlement funds among a substantial number of applicants.  *See id.*

3.      The Court gave "the best notice practicable" to all potential class members, each of whom were afforded an opportunity to opt out of the settlement. *See* DE 246. The Court approved the settlement on September 30, 2005, incorporating the Settlement Agreement into its Final Order and Judgment.  DE 246. It overruled various objections, and found that providing benefits to those truly in need was in the best interests of the class as a whole.  *See id.* The Court found that the "Settlement Agreement, including the Plan of Distribution and Plan of Allocation … is a fair, reasonable and adequate compromise of the claims." *Id.* at p. 21. The Court expressly retained exclusive and

2

continuing jurisdiction over the interpretation, implementation, performance, and enforcement of the settlement:

> [T]his Court shall retain exclusive and continuing jurisdiction over the Action, all Parties, the Claims Conference and Settlement Class Members to interpret and enforce the terms, conditions and obligations of this Final Order and Judgment, including all matters relating to the consummation, performance, and enforcement of the Settlement Agreement.

*Id.* at p. 21–22.

4.      Plaintiff Robert Langermann ("Langermann") received the notices and elected not to opt out of the settlement. The Court consequently ruled that he would be "bound by the Settlement Agreement" and would "not have any further opportunity to exclude [himself] from the Action." *Id.* Langermann thereafter applied for benefits. *See id.* at p. 23–26; *see also* DE 26 at p. 7–14. Defendant JFSA was designated as the local social service agency to determine Langermann's eligibility and entitlement to receive funding, and Defendant TBCI was tasked with the responsibility of administering to Langermann the funds that Langermann was deemed eligible and entitled to receive. *See* Am. Compl. at ¶¶ 12–13. Langermann received over $7,000 in settlement benefits between 2006 and 2009.

5.      The allocation plan required, and Langermann was informed, that in order to receive settlement funds, documentation must be provided to the agencies to demonstrate eligibility and need. *See, e.g.*, DE 263 at p. 7–8; DE 286 at p. 51–53. Langermann was informed that distributions or grants were not a right, but were discretionary and dependent on demonstrated need. *See id.* This notwithstanding, Langermann (i) requested payment of his credit card bill, but refused to provide the detail of the bill that would have demonstrated what had been purchased; (ii) refused to provide information regarding his investments; (iii) refused to answer questions regarding his marital status; and (iv) refused to sign release forms and provide necessary biographical and financial information. *See id.* at p. 59–65; *see also* DE 316-1 at p. 12; 26.

6.      Although the allocation plan provided that a home visit would "be necessary to determine need" if documentation were not provided, Langermann also refused to permit a home visit. *See* DE 286 at pp. 52; 59; 61; 67; 70.  Eventually, the agency's attorney became involved and advised Langermann that if he refused to cooperate and comply with the settlement terms (*i.e.*, by signing a release and permitting a home visit), then his requests for grants and funding would not be processed. *See id.* at pp. 52; 59; 61; 67; 70; 72.  Langermann still refused.  *See id.* at p. 20.

7.      While Class Counsel successfully resolved some of Mr. Langermann's issues with the agencies, Langermann remained dissatisfied with the amounts he received and the disallowance of some claims.  He was also unhappy that the social service agencies asked him to sign a release to obtain relevant financial information and to conduct a home visit.  *See, e.g.*, DE 286; 296; 303.  To address his dissatisfaction, in July of 2009 Langermann filed a *pro se* motion entitled "Class Member Plaintiff Robert Langermann's Motion for an Order to Show Cause why the Blue Card Inc. and the Las Vegas Jewish Family Service Agency Should not be Held in Contempt of Court" (hereinafter, "Contempt Motion"), wherein he acknowledged that the Court "retained exclusive and continuing jurisdiction over … the Settlement Class members to interpret and enforce the terms, conditions and obligations of the Final Order and Judgment in this matter."  DE 286 at p. 5 (citing DE 246).

8.      Through the Contempt Motion, Langermann complained about the amounts of disbursements he received from the settlement, and about the agencies' requests for a release and a home visit.  Langermann argued that these requests, even though made in order to determine his need and eligibility, were arbitrary and oppressive and in violation of the allocation plan and of his right to privacy.  *See* DE 286 at pp. 7–18.  Among other legal theories, Langermann asserted violations of 21 U.S.C. § 401, the Fourth Amendment, breach of the allocation plan, violation of the "Older Americans Programs," 42 U.S.C. § 3001, breach of fiduciary duty, extortion under 18 U.S.C. § 1951, mail fraud under 18 U.S.C. § 1341, and violation of RICO, 18 U.S.C. § 1861.  *See id.* at pp. 6, 18–25.

9.      Judge Seitz "carefully reviewed" the Contempt Motion and rejected Langermann's claims on the merits on March 3, 2010.  *See* DE 295.  The order stated, with emphasis supplied:

> [T]he Court must deny Mr. Langermann's motion because it is clear from the exhibits attached to the motion that ***both The Blue Card Inc. and the Las Vegas Jewish Family Service Agency have acted consistent with their responsibilities*** under the Amended Plan of Allocation.  The settlement fund, created because the named plaintiffs agreed that the fund should be allocated amongst the neediest members of the class of Hungarian Holocaust survivors, contains a finite amount of money.  ***Therefore, the Allocation Plan provides means to determine the neediest.  Mr. Langermann has not been asked for any information that has not been asked of any other American survivor.  Such information is an essential first step for participation in the Plan of Allocation.  If Mr. Langermann feels that such information request is intrusive and he will not provide it, the Court respects his feelings and his decision, but such decision on his part means that he cannot be considered for participation in the Plan nor receive any more of the funds***.
>
> Additionally, it appears that Mr. Langermann questions the extent of the reimbursements that he has received, including denials of reimbursements in excess of the yearly maximum allocation each survivor may receive.  Because the fund is limited and the survivors in need are numerous, ***the Allocation Plan gives the distribution agencies, such as those Mr. Langermann seeks to have the Court order to show cause, the discretion to determine need after they have the personal information regarding each applying survivor's medical and financial needs and resources.  There is nothing in Mr. Langermann's submission which would support a finding that the two agencies in question have abused their discretion by acting in an arbitrary manner.  In fact, the submission clearly reflects that Mr. Langermann has been accorded the same respectful treatment and consideration that other applying survivors have been given.***  While the Court wishes that every request for funds could be honored, the reality is that such is not possible.  It is hoped that Mr. Langermann will consider what a difficult task it is to try to help as many of the very neediest survivors the agencies can with the limited funds available, and that he will take comfort in the fact that if he is not receiving the funds, then they are going to someone who is even needier than he.  The Court recognizes the burden this places on Mr. Langermann, but we are all called to dedicate ourselves to helping those less fortunate than ourselves.

10.     Disappointed with his inability to circumvent the Final Order and Judgment through motion practice in the Original Action, Langermann sued TBCI and JFSA in the United States District Court of Nevada, Case No. 2:11-cv-01438 (the "Nevada Action") on September 7, 2011, making the same claims that were denied in the Contempt Motion, and naming Dubbin and Judge Seitz as additional defendants.  The Plaintiffs in the original action (*i.e.*, the settlement class) and Class Counsel filed a motion in the Original Action seeking to enjoin Langermann from prosecuting

5

the Nevada Action since it was an impermissible collateral attack on the settlement over which Judge Seitz retained jurisdiction.[2]   Judge Ungaro issued an order enjoining Langermann from prosecuting the Nevada Action, ruling that the Nevada Action would "involve a re-litigation of the Court's rulings in this case and, specifically the Court's Order Denying Contempt Motion."  DE 320 ("Order on Motion to Enjoin Class Member Robert Langermann").

11.    Langermann appealed Judge Ungaro's order enjoining him from prosecuting the Nevada Action, and the Eleventh Circuit Court of Appeals affirmed by order dated April 22, 2013. *See* DE 5, Case No. 12-11589.  Consequently, on January 13, 2014, the United States District Court of Nevada dismissed the Nevada Action with prejudice, and cautioned Langermann to refrain from filing further motions, lest he be subject to sanctions.  *See* DE 50, Case No. 2:11-cv-01438.[3]

12.    Undeterred, and despite the previous injunction, Langermann has now filed an initial and amended complaint in *this* lawsuit to try again to circumvent the Original Action's Settlement Agreement and Final Order, and to recover "damages" arising therefrom.  *See, e.g.*, Am. Compl. at ¶ 1.  Langermann's allegations acknowledge that this "new" lawsuit arises out of and calls for a reinterpretation and relitigation of the Final Order and Judgment in the Original Action and of Judge Seitz's Order Denying Langermann's Contempt Motion.[4]

---

[2] Because Judge Seitz was named as a defendant in the Nevada Action, she recused herself from addressing Class Counsel's motion in the Original Action for an injunction against the Nevada Action.  It was assigned to Judge Ungaro.  *See* DE 306; 333; 341.

[3] Langermann has filed an appeal to the Ninth Circuit Court of Appeals regarding the dismissal of the Nevada Action, an appeal which remains pending.

[4] Nearly all of the paragraphs in Langermann's "new" complaint concern and relate to the Final Order and Judgment in the Original Action and Judge Seitz's Order Denying Langermann's Contempt Motion, and the following paragraphs, which are incorporated throughout Langermann's entire pleading, refer or directly cite to same: ¶¶ 1, 3– 5, 7–9, 13, 18, 20–54; 56–62; 66–96.  The following paragraphs likewise refer and/or directly cite to the Final Order and Judgment and/or Judge Seitz's Order Denying Langermann's Contempt Motion: ¶¶ 97– 98, 103, 105, 107–08, 114–15, 117, 120–22, 126–27, 130–31, 135–36, 140–42, 149–54, 158–60, 163–70, 173–74, 181–86, 188–91, 195– 96, 202–12, 216, 218–19, 225–26, 231, 234–37, 241–43, 248.

13.    As set forth below, the Court should dismiss Langermann's "new" lawsuit as a frivolous pleading that fails to state a claim upon which relief may be granted and that is otherwise barred by the doctrine of *res judicata*.

## MEMORANDUM OF LAW

### A.    Standard of Review

Under the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests" in order to sufficiently state a claim and withstand a motion to dismiss.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  A plaintiff's complaint must be dismissed if it merely recites "labels and conclusions, and a formulaic recitation of the elements of a cause of action," or if its allegations are implausible on their face (*e.g.*, if the allegations fail to support a reasonable expectation that discovery might reveal corroborating evidence, are clearly barred by *res judicata*, or are otherwise frivolous and incomprehensible). *See id.* at 544–46; 556; *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012) ("The complaint must contain enough facts to make a claim for relief plausible on its face"); *Certex USA, Inc. v. Vidal*, No. 09-61818-CIV, 2010 WL 2942441, *2 (S.D. Fla. Feb. 8, 2010) ("To survive a motion to dismiss, a complaint must … state a claim for relief that is plausible on its face"); *Bearse v. Main Street Investments*, 220 F.Supp.2d 1338, 1344–45 (M.D. Fla. 2002) (explaining that in ruling upon a motion to dismiss, a court shall disregard conclusory allegations); *May v. Hatter*, No. 00-4115-CIV, 2001 WL 579782 *2–3 (S.D. Fla. May 15, 2001) (dismissing *pro se complaint*, explaining that "frivolous actions are subject to dismissal for failure to state a claim [since they] lack any arguable basis in law or fact.").

### B.    Langermann's Amended Complaint is Barred by the Doctrine of Res Judicata

Langermann's "new" complaint is barred by the doctrine of *res judicata*, which holds that "a final judgment on the merits bars the parties to a prior action from relitigating a cause of action that

was or could have been raised in that action." *Kivisto v. Soifer*, 448 Fed. Appx. 923, 924 (11th Cir. 2011).  The doctrine extends to all legal theories and claims arising out of the same "operative nucleus of fact" and bars all subsequent suits raising allegedly new theories, unless a substantial change in the underlying facts or law has transpired. *See Jaffree v. Wallace*, 837 F.2d 1461, 1468–69 (11th Cir. 1988); *Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 632 (11th Cir. 1984); *see also Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) ("[R]es judicata … protects a party's adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.  Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding.").

Here, Langermann's "new" complaint alleges eighteen (18) causes of action, all of which are, in reality, nothing more than repeated attempts to circumvent the Final Order and Judgment in the Original Action, as well as the order denying Langermann's Contempt Motion, which ruled that the Defendants, and particularly TBCI and JFSA, have not violated Langermann's rights, but have rather treated him with "the same respectful treatment and consideration that other applying survivors have been given," consistent with their responsibilities under the court-approved settlement and allocation plan.  DE 295.  Langermann's "new" lawsuit concerns allegations that were or could have been raised in the Original and Nevada Actions.  They each arise out of and necessarily call for a reinterpretation and relitigation of the adjudications and rulings in the Original Action, namely the September 30, 2005 Final Order and Judgment [DE 246], the March 3, 2010 Order denying Langermann's Contempt Motion [DE 295], and the March 1, 2012 Order enjoining Langermann from prosecuting the Nevada Action [DE 320], which was affirmed by the Eleventh Circuit Court of Appeals.  Accordingly, because there has not been a substantial change in the relevant facts or law and since all of Langermann's claims arise from the Settlement and Final Order and Judgment in the

Original Action, the doctrine of *res judicata* necessitates outright dismissal with prejudice of Langermann's entire complaint. *Accord Jaffree*, 837 F.3d at 1468–69; *Olmstead*, 725 F.2d at 632.

      **C.**      ***Langermann's Amended Complaint is Subject to Dismissal as a Frivolous Pleading***

Langermann's "new" complaint, which contains nothing more than vague and conclusory allegations, is also subject to dismissal as a frivolous pleading.  This is not the first time that Langermann has sued the Defendants alleging outlandish torts and supposed constitutional and criminal claims in order to re-argue Judge Seitz's refusal to allow him to rewrite the very settlement to which he participated and agreed to be bound and from which he has already collected substantial benefits.  As this Court observed in *May v. Hatter* when it dismissed a similar *pro se* complaint with prejudice:

> May has now flaunted previous Court orders by filing yet another unintelligible and baseless complaint ….  Although there appears to be several good reasons for dismissing the instant complaint, the undersigned finds the most obvious reason to be because it is utterly devoid of any comprehensible set of facts or legal theory upon which to base a cause of action and should be dismissed as frivolous for failure to state a claim upon which relief can be granted.

*May v. Hatter*, 2001 WL 579782 at *3–4.

Although Langermann has not filed as many lawsuits against the Defendants as had the plaintiff in *May v. Hatter*, Langermann's "new" amended complaint is still nothing more than a re-hashing of Langermann's Contempt and Nevada Actions, which have been rejected and enjoined, respectively. The Defendants—who, for nearly a decade now, have already expended significant time and resources in addressing Langermann's vexatious litigiousness—should no longer be required to bear the expense and onerous burden of responding to Langermann's unsubstantiated claims.[5]

      **D.**      ***Each of the Individual Counts are Subject to Dismissal***

---

[5] Simultaneous with the filing of this motion to dismiss, Defendants are filing a separate motion requesting that Langermann be declared a vexatious litigant and subjected to injunctive procedures so as to preserve and protect the judiciary and Defendants' time and resources.

14975741v1 0928762

**1.      First Cause of Action (42 USC § 1983 – Bivens Action)**

Count I of Langermann's amended complaint alleges that the Defendants, by subjecting him to the "forceful seizing" of his settlement benefits, "intentionally deprived [him] of his 4th Amendment right to be free from unreasonable searches and seizures and his 5th Amendment right to not be deprived of life, liberty and property without due process of law."  *See* Am. Compl. at p. 23–26.  A review of Langermann's allegations reveals that, in fact, nothing was actually taken from Langermann's possession, and there has certainly not been a "seizure," forceful or otherwise. Rather, Langermann merely alleges that on multiple occasions since entry of the settlement agreement in 2005, JFSA and TBCI, with the acquiescence of the other Defendants, have refused to issue settlement funds to Langermann unless Langermann first agreed to a home visit and provided documentation to justify his eligibility and entitlement to funding.  *See* Am. Compl. at p. 7–22.

There can be no *Bivens* cause of action where, as here, the claim concerns withholding of benefits.  *See, e.g.*, *Parham v. Lamar*, 1 F.Supp.2d 1457, 1461 (M.D. Fla. 1998) ("The courts have refused to recognize a *Bivens* cause of action under the Fifth Amendment); *see also Schweiker v. Chillicky*, 487 U.S. 412, 429 (1988) (refusing to imply *Bivens* action for alleged Fifth Amendment violations in the denial of Social Security benefits).  Langermann likewise cannot premise a *Bivens* action on a violation of the Fourth Amendment because he merely complains about what he perceives to be the withholding of benefits to which he is entitled, but does not actually allege the requisite search or seizure.  *See Parham*, 1 F.Supp.2d at 1460.  Equally importantly, this claim is barred by *res judicata* because the so-called search and seizure was not unreasonable; the Court has already (1) determined that the agencies' requests for a home visit and documentation were entirely consistent with and contemplated by the "fair and reasonable" settlement agreement and (2) found that these requests, to which the other settling class members have been similarly subjected, were an "essential first step" in order to receive settlement funding.  *See, e.g.*, DE 246; 295.

14975741v1 0928762

2.      **Second Cause of Action (42 USC § 1985 – Conspiracy to Interfere with Civil Rights)**

In Count II, Langermann alleges that the Defendants were all part of some elaborate "conspiracy" to interfere with Langermann's "civil rights."  In order to allege a § 1985 conspiracy to interfere with civil rights, a plaintiff must first allege "the existence of a conspiracy for the purpose of depriving … a person of equal privileges and immunities under the laws."  *Cromer v. Crowder*, 273 F.Supp.2d 1329, 1336 (S.D. Fla. 2003) (citing *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627–28 (11th Cir. 1992)).   This requires a showing of "class-based, invidiously discriminatory animus."  *Id.*

Here, Langermann alleges that a conspiracy existed to treat him differently from his fellow Original Action class member plaintiffs by targeting him as a member of the following three protected classes: (1) "class of one" (consisting of Langermann himself); (2) class of "pro se litigants"; and (3) class of "older Americans."   *See* Am. Compl. at ¶ 116.  These allegations cannot survive a motion to dismiss.  First, a "class of one," consisting solely of Langermann, is obviously not a class, much less a legislatively-recognized protected class.  Second, Langermann fails to allege that he was targeted because of his *pro se* litigant status; the so-called discrimination occurred *before* Langermann had initiated litigation, and Langermann obviously cannot retroactively manufacture a civil rights claim by complaining about preexisting conduct wholly unconnected to his later-in-time *pro se* litigant status.   Third, Langermann is foreclosed from asserting discrimination on account of his status as an "older American" because the other Original Action plaintiffs (whom Langermann erroneously claims received better and nondiscriminatory treatment) belong to this same class, thus defeating any claim of class-based discrimination.   *See, e.g.*, Am. Compl. at ¶ 24 and DE 246 (conceding that the Original Action plaintiffs are all elderly Holocaust survivors).

Even overlooking Langermann's failure to adequately allege a class-based discrimination, he cannot viably plead an injury-causing act in furtherance of the conspiracy. *See Cromer*, 273

14975741v1 0928762

F.Supp.2d at 1336.  Judge Seitz has already ruled that Langermann has "been accorded the same respectful treatment and consideration that other applying survivors have been given," and that Langermann has not sufficiently sustained a recognizable injury as a result of Defendant's complained-about conduct. *E.g.*, DE 295.  Because Count II is premised on allegations and theories that are directly contrary with prior rulings, Langermann's conspiracy claim is barred by *res judicata*.

      **3.**        **Third Cause of Action (Retaliation)**

In Count III, Langermann alleges that the Defendants "deliberately retaliated" against him for his persistence in seeking redress.  "To state a retaliation claim, a plaintiff must allege first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech."  *Thompson v. Hall*, 426 Fed.App'x. 885, 859 (11th Cir. 2011).  Here, the alleged retaliatory conduct is predicated upon the Defendants' insistence that Langermann permit a home visit and provide financial documentation before receiving settlement funds.  Both the Original Action record and Langermann's "new" amended complaint reveal, however, that Defendants' insistence upon documentation and a home visit were not retaliatory, but were rather "fair and reasonable" conditions precedent to receiving funding pursuant to and in accordance with the Final Order and Judgment in the Original Action.  *See* DE 246; *see also* DE 211; 263; 295; 320.  As a result, the Court should dismiss Count III on *res judicata* grounds, as against all Defendants other than JFSA.

As to JFSA, Langermann further alleges that, in November of 2012 and January of 2013, JFSA "threaten[ed] to withhold further assistance … unless Langermann dismissed JFSA from the Nevada lawsuit."  Am. Compl. at ¶ 90–91; 94.  These allegations are insufficient to state a claim for retaliation.  First, Langermann has inadequately alleged that his speech was constitutionally protected

because vexatious and frivolous litigation is enjoinable and is decidedly not a protected First Amendment right.  *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1298 (11th Cir. 2002).[6] Furthermore, since any denial to consider Langermann's requests was attributable to his own refusal to comply with the settlement conditions precedent, Langermann wholly fails to allege that JFSA's conduct affected his speech or that there was a causal connection between the retaliatory actions and the adverse effect on Langermann's speech.  *See* DE 295.

### 4.     Fourth, Fifth, and Sixth Causes of Action (Violation of 18 USC §§ 241, 214, & 245)

Through Counts IV, V, and VI, Langermann purports to allege that, by conditioning his settlement benefits upon his compliance with the terms of the settlement agreement, the Defendants have somehow infringed upon his "federally protected activities" and his Fourth Amendment rights. He seeks relief under 18 USC §§ 241, 242, and 245 by broadly alleging, without any facts, that the Defendants "conspired to oppress, threaten and intimidate Langermann" with acts that were "willful and oppressive and malicious."  Am. Compl. at ¶¶ 127–29; 133; 138.   Even if Langermann's conclusory allegations were sufficient to state a claim, which they are not, Counts IV, V, and VI must be dismissed because on *res* judicata since they have already been decided adversely to Langermann. Furthermore, there is no private right of action under these criminal statutes.[7]

---

[6]Here, the first amendment speech that Langermann claims was retaliated against was his filing of repetitive motions and pleadings following this Court's order denying his Contempt Motion, *see* Am. Compl. ¶¶ 120–25, and both this Court and the United States District Court of Nevada have independently admonished Langermann for these actions. *See, e.g.*, DE 295; 320; DE 50 in Nevada Action Although Judge Ungaro actually enjoined Langermann from prosecuting the Nevada Action, he ignored the order, even after it was affirmed, and continued to prosecute the Nevada Action by, among other things, filing a motion seeking "an order to extend time for service of process upon the named defendants."

[7] *See Cok v. Cosentino*, 876 F.2d 1, 1–2 (1st Cir. 1989); *Hearn v. Int'l Business Machines*, No. 8:13-cv-827, 2013 WL 2480207, *2 (M.D. Fla. June 10, 2013); *Diaz Aviation Corp. v. Airport Aviation Servs, Inc.*, 762 F.Supp.2d 388, 393 (D. P.R. 2011); *Abou-Hussein v. Gates*, 657 F.Supp.2d 77, 80–81 (D. D.C. 2009); *Stoll v. Martin*, No. 3:06-cv-180, 2006 WL 2024387, *2 (N.D. Fla. July 17, 2006); *Mosely v. Awerbach*, No. 8:06-cv-592, 2006 WL 2375050, *6 (M.D. Fla. Aug. 15, 2006); *Fundiller v. City of Cooper City*, 578 F.Supp. 303, 306 (S.D. Fla. 1984), *rev'd on other grounds*, 777 F.2d 1436 (11th Cir. 1985).

5.      **Seventh Cause of Action (Civil Conspiracy)**

In Count VII Langermann alleges that the Defendants, in concert, participated in some sort of conspiracy with "malicious intent to harm Langermann."  *See* Am. Compl. at ¶ 142.  Langermann's barebone legal conclusions fall far short of the requisite pleading standards required to allege the elements of a civil conspiracy under Florida law, of which there are four: "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damages to the plaintiff as a result of the acts done under the conspiracy."  *Sonnenreich v. Philip Morris Inc.*, 929 F.Supp. 416, 419 (S.D. Fla. 1996); *Olesen v. Gen. Elec. Capital Corp.*, 135 So.3d 389, 398–99 (Fla. 5th DCA 2014).  These shortcomings in and of themselves necessitate dismissal of this count.

Nor could any of the elements ever be alleged in light of the Court's prior rulings.  It is apparent that Langermann's "new" amended complaint is alleging that the Defendants engaged in a conspiracy to condition Langermann's receipt of settlement funds on his provision of biographical documentation and allowance of a home visit.  This claim is a legal impossibility because these requests are contemplated in the settlement agreement that this Court approved and to which Langermann agreed to be bound.  *See* DE 246; 363.  Since Langermann has already unsuccessfully complained about these settlement conditions, he is clearly foreclosed by the doctrine of *res judicata* from now alleging that those same requests can support a conspiracy.

6.      **Eighth Cause of Action (Intentional Interference with Plaintiff's Prospective Economic Advantage and Conspiracy)**

Count VIII purports to state a cause of action for "intentional interference with Plaintiff's prospective economic advantage and conspiracy."   In order to allege this cause of action, Langermann would have to show: "(1) an economic relationship; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the

defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party." *E.g.*, *In re Adams*, 478 B.R.476, 490 (N.D. Ga. 2012). As the Court has found that there was nothing "wrongful" about Defendants' insistence on enforcing the terms of the settlement agreement and requiring Langermann to provide documentation and allow a home visit, this count is barred by *res judicata*. *See, e.g.*, DE 246.

### 7.    Ninth Cause of Action (Breach of Trust)

In Count IX, Langermann purports to allege a cause of action for "breach of trust." This count must be dismissed as to all Defendants other than TBCI, there being no allegations against them. As to TBCI, this count must be dismissed because there is no valid cause of action under Florida law for "breach of trust," and, even if there were, Langermann's vague and conclusory allegations simply rehash Langermann's grievances using a different label and are thus barred by *res judicata*.

### 8.    Tenth Cause of Action (Legal Malpractice)

Langermann's claim for legal malpractice fails on similar grounds. In Count X, Langermann makes a number of broad and vague allegations without any factual support whatsoever, including that Class Counsel "conspired," "concealed or suppressed material facts from the Court and Langermann," and "embezzled and/or misappropriated settlement funds." As a preliminary matter, Count X must be dismissed as to all Defendants other than Class Counsel as the allegations of Count X are solely directed at Class Counsel and because a legal malpractice cause of action cannot exist without an attorney-client relationship.

The only specific fact Langermann alleges in support of his charge of legal malpractice is that Class Counsel did not timely appeal Judge Seitz's March 3, 2010 order, which found (based upon Langermann's own *pro se* motion) that TBCI and JFSA had engaged in no wrong by insisting that Langermann provide documentation and allow a home visit. But this is not a factual basis for a legal malpractice claim, and even if it were, this alleged malpractice is time-barred by the applicable

statute of limitations.  *See* § 95.11(4), Fla. Stat.  To adequately state a malpractice claim under these circumstances, Langermann would have to allege (1) that there was a basis to appeal Langermann's *pro se* motion; (2) that appealing Langermann's *pro se* motion would benefit (or at least not adversely affect) the interests of the Original Action class as a whole; and (3) that Class Counsel deviated from the standard of care by not appealing Langermann's *pro se* motion.  Langermann's claims do not and cannot meet this standard because Langermann wanted additional benefits for *himself*, and not the class.  Class Counsel's duty of representation was to the class as a whole; it would have been a violation of their duties to the class to pursue an appeal so as to enable one class member to circumvent the Settlement Agreement and Final Order and Judgment for his own personal benefit and at the expense of the other class members.  Consequently, this count must be dismissed for failure to state a claim.  *See Brenner v. Miller*, No. 09-60235, 2009 WL 1393420, *1 (S.D. Fla. May 18, 2009).

**9.      Eleventh Cause of Action (Breach of Fiduciary Duty)**

Count XI alleges that the Defendants each owed fiduciary duties to Langermann to coordinate his claims in accordance with the Settlement Order and Court-approved Plan of Allocation.  Langermann contends that these duties were breached when the Defendants withheld settlement benefits from Langermann, pending his cooperation in providing biographical documentation and allowing a home visit.  Once again, because Judge Seitz has already ruled that the Defendants' actions were contemplated by and in furtherance of the Settlement Order and Court-approved Plan of Allocation, Langermann's breach of fiduciary claim is barred by *res judicata*.  Count XI must also be dismissed because Class Counsel's alleged actions are duplicative of and subsumed within Langermann's time-barred and unsupported legal malpractice cause of action.

**10.      Twelfth Cause of Action (Fraud)**

Count XII purports to state a cause of action for fraud based upon the following actions which allegedly were committed on the following respective dates: (1) "blatantly misrepresented

16

ongoing commitment to the class and individual class members" (March 17, 2005); (2) "misrepresented their ongoing commitment to assist class members" (June 17, 2005); (3) "concealed the availability of the remaining Settlement funds" (between December 31, 2010 and July 6, 2012); (4) "fraudulently concealed from class members the availability of $464.553.56 settlement funds" (on and after July 10, 2012); (5) "misrepresented requirements of the Court approved Plan of Allocation" (September 6, 2012, October 9, 2012, and November 7, 2012); and (6) "misrepresent[ation of] duties as class counsel" (October 25, 2012).  *See* Am. Compl. at ¶ 196.

Langermann's allegations in this count are nothing more than a re-casting, as "fraud," of his disagreements with the terms of the Settlement Agreement, the Final Order and Judgment, the Plan of Allocation, and Judge Seitz's March 2010 interpretation thereof.  As such, and as noted above, Count XII is barred by *res judicata*.[8]  Moreover, Count XII merely alleges labels and legal conclusions without any supporting facts.  Langermann's vague pleading is particularly fatal here because, to withstand dismissal, the circumstances allegedly constituting fraud must be stated with detailed particularity, and may not be pled in general terms.  *See* Fed. R. Civ. P. 9(b)[9]  *See, e.g.*, *Zarrella v. Pacific Life Ins. Co.*, 755 F.Supp.2d 1218, 1224 (S.D. Fla. 2010) ("[T]he Court finds that the complaint does not specify the fraud allegations with the particularity required under Rule 9(b),

---

[8] The allegations in Count XII concerning the 2012 allocation of $464,553.56 does not change the analysis.  After five years in which approximately $4.2 million was distributed world-wide each year, the Settlement Agreement and Final Order and Judgment called for Class Counsel and the Claims Conference to recommend an allocation of remaining funds from accumulated interest, once those sums were ascertained.  Since the remaining sum was approximately one-tenth of the settlement, Class Counsel and the Claims Conference needed to devise a formula consistent with the geographic distribution in the original allocation plan (42% of the class in Israel, 22% in Hungary, and 20% in the United States) that still made meaningful sums available for eligible class members.  The possibility of a disagreement was anticipated in the Settlement Agreement and it was indeed a contentious process, culminating in Defendants' July 6, 2012 Motion for Order Authorizing Disbursement of Remaining Funds [DE 326] and an Order by the Court approving the motion on July 10, 2012 [DE 327].  In any event, if Langermann believed he had the right to be considered for benefits from the 2012 supplemental allocation, he could and should have raised his concerns in the Original Action before Judge Seitz who, at all times, retains jurisdiction over the allocation, distribution, and enforcement of the settlement funds.

[9] The Court should note that although Langermann alleges intentional concealment, these notions are belied by Langermann's own allegations.  *See, e.g.*, Am. Compl. at ¶ 70 (noting that class counsel disclosed previously undisclosed funds, thereby defeating any notion that the concealment was malicious or intentional).

14975741v1 0928762

and thus, the fraud-based counts will be dismissed."); *Hill v. Morehouse Medical Assocs., Inc.*, No. 02-11429, 2003 WL 22019936, *3 (11th Cir. Aug. 15, 2003) ("[S]ome indicia of reliability must be given in the complaint to support the allegation of fraud.  To that end, the plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.").

11.     **Thirteenth Cause of Action (Conversion)**

Count XIII is also barred by *res judicata*.  At issue in Count XIII is Langermann's assertion that he had a right to possess settlement funds, but that the Defendants wrongfully withheld such funding from Langermann, thereby improperly converting it to their own use.  As already addressed, Langermann did not receive the funding he requested because he failed to comply with the conditions precedent to receiving funding and was therefore determined ineligible to be considered for the amount of funding he requested.  These issues have already been addressed, and this claim is barred by the doctrine of *res judicata. See* DE 295.  Langermann cannot now contend that the "fair and reasonable" conditions precedent to the settlement constitute "unauthorized acts," and his conversion cause of action fails as a matter of law.  *See Small Business Admin. v. Echevarria*, 864 F.Supp. 1254, 1262 (S.D. Fla. 1994) ("Under Florida law, a conversion is an *unauthorized* act which deprives another of *his* property permanently or for an indefinite time." (emphasis supplied)).

12.     **Fourteenth and Fifteenth Causes of Action (Negligent Hiring & Supervision)**

In counts XIV and XV, Langermann alleges that TBCI and JFSA breached their duties of reasonable care by hiring and failing to reasonably train employees who were "incompetent, unfit, unqualified, and insensitive."  Langermann's "new" complaint does not contain a single factual allegation to support these legal conclusions, such as how the employees were "incompetent," "unfit," "unqualified," or "insensitive."  Nor does Langermann explain why or how TBCI and JFSA were negligent in their hiring decisions and supervising responsibilities.  On this basis, the counts are

18

subject to dismissal. *See Franza v. Royal Caribbean Cruises, Ltd.*, 948 F.Supp.2d 1327, 1334 (S.D. Fla. 2013). Moreover, Counts XIV and XV, like the others, must be dismissed on *res judicata* since they are again based on the agencies' insistence that Langermann comply with the conditions precedent to the allocation plan.[10]

13.   **Sixteenth Cause of Action (Supervisorial Responsibility for Violations of Civil Rights under Color of Law – Bivens Action)**

According to Langermann, Count XVI of his amended complaint is a "claim for relief brought pursuant to Bivens for violations of Langermann's rights under the 4th and 5th Amendments of the United States Constitution." It apparently differs from Count I because the Defendants targeted in this particular count are "unknown Supervisory Personnel of Defendants The Blue Card, Inc. and JFSA." Am. Compl. at ¶¶ 233–34. This cause of actions fails and must be dismissed for the same reasons articulated regarding Count I.

14.   **Seventeenth Cause of Action (Breach of Covenant of Good Faith and Fair Dealing)**

Count XII purports to allege a cause of action for breach of the implied covenant of good faith and fair dealing. No contract is attached to or incorporated within the amended complaint and nowhere else in Langermann's amended complaint is there any discussion of a contract or of the contractual terms that Langermann believes have been breached. These allegations fail to state a claim upon which relief may be granted. *See, e.g.*, *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F.Supp.2d 1333, 1340 (S.D. Fla. 1998) (noting that a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained absent an allegation that an express contractual term has been breached). Of course, if the contract at issue is the Court-approved settlement agreement

---

[10] These causes of action are also time-barred by the four-year statute of limitations. *See* § 95.11(3), Fla. Stat.; *Doe v. St. John's Episcopal Parish Day School, Inc.*, No. 8:13-cv-2467, 2014 WL 585767, *4 (M.D. Fla. Feb. 12, 2014) (dismissing negligence supervision and retention claims as time-barred).

and allocation plan, Langermann's breach of covenant claim would be barred by *res judicata* and for the reasons repeatedly set forth herein.

> **15.     Eighteenth Cause of Action (Intentional Infliction of Emotional Distress)**

The final count purports to allege intentional infliction of emotional distress based upon the Defendants' unidentified "outrageous conduct," the purpose of which was to cause "Langermann to suffer humiliation, mental anguish, and emotional distress."  Am. Compl. at ¶ 249.  Langermann does not allege any basis for inferring Defendants' intent, nor does Langermann allege the so-called "outrageous conduct" supporting his claim.   His bare-boned and conclusory allegations are insufficient to sustain an intentional infliction of emotional distress claim and Count XIII must be dismissed on this basis alone.  *Accord Bell Atlantic Corp.*, 550 U.S. at 554.  Equally importantly, since Count XIII is predicated on the Defendants' insistence that Langermann first permit a home visit and provide documentation prior to obtaining settlement funds, his claim is barred by *res judicata.*   Therefore, Langermann's intentional infliction claim is implausible, if not altogether frivolous.  *Cf.* DE 295; *Resnick*, 693 F.3d at 1324–25 (noting that a claim should be dismissed if it is not plausible on its face); *Certex USA*, 2010 WL 2942441 at *2 (same).

WHEREFORE, Defendants respectfully request that this Court enter an order dismissing this action in its entirety and granting any other and further relief in Defendants' favor as the Court deems just under the circumstances.

HINSHAW & CULBERTSON LLP

/s/ *RONALD L. KAMMER*
**RONALD L. KAMMER**
Florida Bar No. 360589
rkammer@hinshawlaw.com
**DANIEL C. SHATZ**
Florida Bar No. 94696
dshatz@hinshawlaw.com
2525 Ponce de Leon Blvd. Suite 400
Miami, Florida 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063

*Attorneys for Defendants*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 15, 2014, a true and correct copy of the foregoing was served by certified and regular mail on Robert Langermann, P.O. Box 19724, Las Vegas, NV 89132, and electronically filed with the Clerk of the Court by using the CM/ECF system.  I am unaware of any non-CM/ECF participants other than Robert Langermann.

<u>/s/ *DANIEL C. SHATZ*</u>
Daniel C. Shatz